counsel, you may proceed. Thank you, Your Honor. Good morning. My name is Craig Orrent. I am a deputy Federal public defender from the District of Arizona, and I represent the appellant in this case, who is the juvenile. This Court does, in fact, have the authority and the jurisdiction to hear this appeal. Though the appellant waived her right to appeal generally, she did not, based on this law, specifically waive her right to appeal the restitution order issued by the district court. All but one of the arguments she has raised here are arguments that the district court exceeded its authority under the statute, which, in effect, is an argument that the sentence, that is, the restitution order, is unlawful. And for that reason by itself, for those reasons alone, this Court has jurisdiction. But alternatively, we suggest that the appellant did not have notice, under this Court's precedent, of what she was waiving when she implemented the waiver before the district court. And that is because she had no idea, under the agreement, how much restitution she would be ordered to pay. This Court has held that it is appropriate for a district court judge to order restitution where a plea agreement does not contain a cap on that restitution. But if the district court does so, the defendant, or in this case the appellant, must have specific notice. Well, then what did she waive her right to appeal for? To challenge the judgment, to challenge all matters that existed prior to entry of judgment, prior to sentencing. The restitution order was an anticipatory matter that had not been resolved. And doesn't that put you in a tough spot with respect to the third issue, whether the government proved the expenses? I think you've got a good argument with respect to the first two, the travel expenses being reimbursable and whether they're reimbursable even if it's covered by donations. But that third issue could give you a problem in jurisdiction, could it not? The third issue in terms of the sufficiency of the evidence? No, no. Jurisdiction. I'm still stuck on the threshold question as to what's been waived here and what has not been waived. Well, the issue of medical expenses, to my knowledge, is not at issue here. It was not raised by the government. We did not, the $450,000, $400,000 medical expense that the government was seeking below was rejected by the district court and the government did not appeal. I'm talking about whether the government presented sufficient evidence to establish the claimed loss and the loss amounts. Well, that's what I was saying earlier, right. All right. Okay, Stan, you're on. That's what you meant about sufficiency of the evidence. I'm sorry, I misunderstood. I agree for us to have this Court address that issue, we would be required to address the notice issue that Phillips, the United States v. Phillips and the United States v. Gordon cases address. And that's what I was trying to address a moment ago, which is that there was no cap on restitution, and where there's no cap on restitution in the plea agreement and there is an ambiguity, this Court, in those two previously mentioned cases, has concluded that the defendant, the appellant, did not have the appropriate notice in order to implement a valid waiver. What is the ambiguity here? The ambiguity is that the government chose, and as we know from this Court's prior precedent, the government in creating the plea agreements is held to the language it chooses to use, and the plea agreements are strictly interpreted under contract principles against the government. But the government chose to use the phrase, the victim and his assignees. That phrase is subject to two different interpretations. In fact, we don't believe it's ambiguous at all. Our position is that the language is quite clear and that the district court was limited to ordering any expenses incurred by the victim, which is what the plea agreement says, and his assignees should the victim pass on, which is what happened here. But the government's argument, in effect, expands that phrase beyond what we believe it means, and what I suggest a common interpretation of that phrase indicates it means. Counsel, do we need to find that the district court exceeded its authority, to use the words you've used, to get to the ultimate merits here? I'm not sure that I understand your argument that the district court exceeded its authority, and therefore this issue is properly before us right now. But even if that is the case, do we have to find that the court exceeded its authority in order to reach the ultimate issue here under 3664? Well, I believe the court represented with two alternative bases to get beyond the jurisdictional issue. One is if there's an assertion, which there is, that the district court exceeded its authority or violated the statute, which resulted in an unlawful sentence in the context of restitution. The second is the notice issue. Did the defendant, appellant, have proper notice sufficient to waive the restitution issue? And what I was saying a moment ago is that that phrase I was talking about is in the conjunctive. It says the victim and his assignees, as opposed to the victim or his assignees. So the government could argue that what the defendant was agreeing to, or who the defendant was agreeing to pay, is the physical victim, who is now deceased, and his assignees, which in this case is the victim's family, for any independent losses that they may have occurred, completely unrelated to the physical victim. But had they chose the language more carefully and had put the victim or his assignees, that would be more clear, because then one could argue that the defendant was required to pay the physical victim or, in his absence because of death, then the victim's assignees. So there is an interpretation issue here that is vague. And in fact, Your Honor, do you – you might discuss why the family is able to collect. I'm sorry, Your Honor. Why the family is entitled here to object. Why the family is entitled to recover? Yes. Well, we suggest that they are not. That the victim – Well, I – it's that issue I want you to address. We – our position, Your Honor, is that the victim's family, his parents, would be entitled to recover any losses that the victim himself would have been able to pursue had he survived. All right. Medical expenses, lost wages, travel expenses that he incurred in furtherance of investigation which comports with the statute. But that's not what's happening here. These expenses that the victim's family pursued below were expenses for travel prior to the victim's death and that were incurred arguably, allegedly, by the victim's family on their own. But to assist in his recovery, so he would be entitled, under their argument, he would be entitled to recover for the assistance that they rendered to him, which was considerable support, why is that not the case? And that brings up the case of United States v. Keith, where the female, I think it was a rape victim, was permitted by this Court to recover her travel expenses when she herself traveled home to see her family. And this Court concluded that the district court was within its right to say that those travel expenses were necessary to help in the victim's care. But the difference is that the victim, the physical victim, incurred the travel expenses. And here the difference is that if the victim can't travel, the parents come to him to render the support. Well, the statute, as this Court knows, this prior case law requires a strict interpretation of the statute and to use the plain meaning of the statute. And the statute in this context allows recovery for victims who have been physically or sustained bodily injury. And these victims, the family did not sustain bodily injury. Well, isn't this just a logical extension of Keith? Well, as, you know, respectfully, as we requested in our briefs, we suggest, with all due respect, that Keith was wrongly decided. And we respectfully requested the Court to revisit that issue. And the reason we made that request is because in citing the statutory language,  And the rest of the sentence was that we're entitled to recover nonmedical care or treatment rendered in accordance with a method of healing recognized by the law of the place of treatment. The Court pigeonholed the travel expenses incurred by the victim there to get over the restrictive statute and to allow recovery. But the Court failed to cite that language. And according to the cases we've cited, the plain meaning of that language has to mean or refer to the kinds of treatment and care that is unorthodox. Healing ceremonies, even here in Chinatown, I was thinking about last night, certain methods of healing that we might not recognize that but that are otherwise permitted. Thank you, Counselor, your time has expired. We'll hear from the other side. Good morning, my name is Ann Shale, I'm an assistant United States attorney for the District of Arizona. The defendant in this case knowingly and voluntarily waived her right to appeal, including her right to appeal in order of restitution. As a result, her appeal should be dismissed. In every respect? Pardon me? In every respect? I believe in every respect except a jurisdictional issue, which you cannot waive, is my understanding. Well, what about the legal issues as opposed to, let's say, the factual issues? I think that she has waived every right to appeal unless the Court determines that the sentence that or the restitution order that was imposed was an illegal sentence. All right, well, that's the point. Right. We can look at that, can we not? Which is what the opposing counsel would like us to do. That's right. I think you have to look at that to determine whether or not she waived her right to appeal. And the government still asks that in determining whether or not that sentence was illegal, and we argue that it was a legal sentence and a legal restitution order, that if you find that it was a legal restitution order, that you dismiss the appeal as opposed to affirming the order of restitution. In the appellate waiver section of the written plea agreement, though, there's no specific mention of the restitution order, is there? There's a waiver of issues relating to judgment and sentence. There is not. But it's the government's argument that an order of restitution is part of a sentencing procedure, and it's included in the judgment and commitment order, which is part of the sentencing procedure. Isn't there some ambiguity as to whether or not the appellate waiver included the restitution order in light of the fact that the restitution order is not included in the appellate waiver, but yet it's mentioned in at least one other place in the written plea agreement? I don't believe so, Your Honor. Restitution order or waivers of restitution orders have been upheld by this court before in similar situations, including the one that defense cites in their motion or in their appeal brief, which is the United States v. Gordon, that in that case, the defendant appealed only a portion of the restitution order, arguing that it was illegal or that the defendant didn't have sufficient information. The court did find that it was vague, that the plea agreement was vague, but did affirm the restitution order. Well, the court also found in Gordon that there was no knowing and intelligent waiver of the right to appeal the restitution order. And in Gordon, it was because they felt that there wasn't sufficient information at the time of the change of plea. In this case, we find, we argue that the defendant did have sufficient notice of what the restitution order would be, although there was no specific amount of restitution. Didn't the PSR come in kind of late? Wasn't there an amendment to the PSR that boosted the amount? There were. And I believe that the issue is whether or not it was a knowing and voluntary waiver at the time of the change of plea. The PSR was after that. But at the time of the change of plea, the defendant did know that she was going to be responsible for restitution. She agreed to pay restitution. She knew that medical expenses would be included in that restitution. She knew that any expenses under 3663 or 3663A, whichever statute the court applied, would be included in that. Let's assume there's ambiguity. Let's assume that there's a valid, there's a valid appeal here. There's been no waiver. Isn't the ultimate issue here who's going to be reimbursed, whether it's going to be the friends of the family who at one point were identified by the parents as making loans to the family so that they, so the parents could take these trips, or the family members themselves? Isn't that the issue in the case? I think that that is not the issue. This Court has held in prior opinions that the defendant, and I believe that's Crawford, that the defendant needs to show that the amount, it's like an offset, that the amount that he's entitled or she's entitled to an offset was for the exact same expenses that were paid by either an insurance company or friends. That is not the record in this case. In this case, the defendant's stepfather testified that they had received money from friends. The defendant's stepfather testified that it was similar to a funeral or a wake where people bring food and money for the family. But the district judge specifically asked the parents at one point, where do these monies come from? And the father indicated that they were loans, that the money had been borrowed. Then at another point, later in the colloquy, there's the reference to the wake and the fact that money was given to the family and it was something like a wake. Ultimately, the district judge didn't seem to be able to appreciate the existence of 3664. He didn't know whether or not there could be restitution if other people had stepped up to the plate. He speculated as to whether or not the collateral source rule and tort would apply to this kind of a situation. Wouldn't it be appropriate to remand the case to allow the Court to make that determination? No, Your Honor. I think that it's similar to Crawford where the Court should use Crawford as an analysis. The record is not clear. The record does say that Mr. Hart, the stepfather, did testify that he received money. He termed it loans, but when he was asked whether or not he would have to pay that money back, he said no one ever asked that it be paid back. Additionally, it was given money that he ultimately used for these travel expenses and food expenses. But the record does, the defendant did not establish, and there's nothing in the record to show, that the money was given specifically for the purpose to travel to Phoenix to be with his son. He could have used it for babysitting expenses, and I think there was testimony at the restitution hearing that they had babysitters watching their other children. Every day, they would travel from San Carlos to Phoenix, which is about an hour-and-a-half drive, a round trip, so three hours round trip. And all they were asking for was their gas money and their meals while they were in Phoenix. They didn't ask for babysitting expenses. They didn't ask for, in the restitution order, in what was presented to the court. So this money could have been used for their living expenses while they were taking care of Willie while he was in a rehab facility in Phoenix. It could have been used for babysitting. It could have been used for car repairs, had the car needed to be repaired, and I think there was testimony about the state of their car. But that would be somewhat speculative as to whether or not they actually used the money they received from friends to defray their expenses of $80 a day each time they visited the son. It may be, but if the defendant is asking for an offset, it's the government's position that she has a burden of proving that that money came and was used for that specific source. As in Crawford, this court held that the, I believe it was the insurance money from the defendant was not, there was no evidence that it was for the specific purpose of the funeral expenses, which was what the restitution order was for in Crawford. Is your strongest position if, in fact, it was a loan? I think my strongest position is that there's no evidence that it was, if it was a loan or a gift, that it was for the same purpose. No, but I mean your strongest position would be as if it was a loan. They just spent this money, they borrowed it, and they spent it. That's why I'm curious as to why you're arguing so hard that it could be otherwise. Well, I think the case law is, and specifically in Crawford, is that the defendant has to show what that loan or gift was for. If it was not for the same expenses that they're now trying to cover for, recover and restitution, the defendant's not entitled to an offset. And the government's position is. It's not entitled to an offset if it's a loan, is it? You borrow money and spend it for this purpose. It's your money. It's spent. That's true. Not somebody else's. That's true. The government also argues, as in Crawford, the defendant, in Crawford there was a Rule 11 violation. The defendant was never informed of his requirement to pay restitution. This Court found that that failure to provide that Rule 11 notice in his plea colloquy was not sufficient to abrogate the waiver of appeal. The Court still held the defendant to the waiver of appeal even though he didn't have notice about the specific requirement to pay restitution because he had been fined and the restitution order was much lower than that. In this case, the government argues that the defendant had sufficient notice that the medical expenses, just simply the medical expenses, and we believe these travel expenses were part of essential medical expenses because this family did more than simply travel to visit their son. They were de facto a medical power of attorney. They were making medical decisions for their son and needed to be present at the hospital. But we argue that, as in Crawford, they knew, they had, although they didn't have the bills, they had the medical records which were about two inches thick. The defendant had been in the hospital for ten months or in rehab facilities for ten months from the time of the accident until he passed away. And that because of that, they were on sufficient notice that the medical bills would be significant. And in this case, the Court made the determination that the defendant was not required to pay the $400,000 in medical bills but did require the defendant to pay the $23,000. Based on the fact that we believe that she had sufficient notice during the plea colloquy of what she would be responsible for in restitution, we believe she has waived her right to appeal and we would ask that you dismiss this appeal. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Hug, O'scannlain, Miller